1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

| | |
|---|---|
| LYUDVIG DANILYUK, et al., | CASE NO. C10-0712JLR |
| Plaintiffs, | ORDER ON JP MORGAN CHASE BANK, N.A.'S MOTION TO DISMISS |
| v. | |
| JP MORGAN CHASE BANK, N.A., et al., | |
| Defendants. | |

## I.   INTRODUCTION

16

17

18

19

20

This matter comes before the court on Defendant JP Morgan Chase Bank, N.A.'s

("Chase") motion to dismiss (Dkt. # 6).  Having reviewed the motion, as well as all

submissions filed in support and opposition, and deeming oral argument unnecessary, the

court GRANTS in part and DENIES in part the motion to dismiss (Dkt. # 6).

21

22

## II.   BACKGROUND

Plaintiffs Lyudvig Danilyuk and Yekaterina Danilyuk, husband and wife, reside at 2437 South Morgan Street in Seattle, Washington.  (Compl. (Dkt. # 2-2) ¶ III.A-B.)  In 2007, the Danilyuks contacted Defendant Washington Loan Center ("WLC"), a mortgage broker, to refinance their mortgage.  (*Id.* ¶ III.D.)  WLC representatives assisted the Danilyuks in refinancing their loan through a loan program offered by Defendant Washington Mutual Bank ("Washington Mutual").  (*Id.* ¶ III.F.)

During the course of negotiations, WLC representatives allegedly led the Danilyuks to believe that they would receive a fixed-rate loan with no prepayment penalty.  (*Id.* ¶ III.J.)  The Danilyuks, however, ended up with a negative amortization adjustable rate mortgage instead.  (*Id.* ¶ III.K.)  Moreover, according to the Danilyuks, WLC representatives failed to timely or properly notify them that this was the type of loan they were receiving (*id.*); WLC representatives intentionally overstated the Danilyuks' income and assets to mislead Washington Mutual into believing that they qualified for the loan program (*id.* ¶ III.Q); and both WLC and Washington Mutual knew, or should have known, the Danilyuks' true income and assets (*id.*).

In addition, WLC allegedly failed to provide the Danilyuks with the required disclosures to properly and adequately inform them of their right to rescind under the Truth in Lending Act ("TILA").  (*Id.* ¶ III.M.)  Specifically, the notices of the right to rescind delivered to Mr. Danilyuk were not properly completed and Mrs. Danilyuk did not receive two copies of the notice.  (*Id.*)  The Danilyuks further allege that Washington Mutual's disclosures were deceptively confusing and failed to properly advise the

1    Danilyuks of the interest rate they were being charged.  (*Id.* ¶ III.O.)  Despite these

2    alleged deficiencies, on December 8, 2009, the Danilyuks transmitted what they

3    characterize as a notice of rescission and qualified written request but allegedly did not

4    receive a response.  (*Id.* ¶ III.P.)

5         On August 22, 2007, following the closing of the Danilyuks' refinance transaction,

6    Washington Mutual went out of business and was closed.  (*Id.* ¶ III.I.)  The Office of

7    Thrift Supervision ("OTS") appointed the Federal Deposit Insurance Corporation

8    ("FDIC") as receiver for Washington Mutual.   (*See* Stines Decl. (Dkt. # 7-2) at 3.)  Soon

9    after, Chase acquired by assignment certain assets from Washington Mutual, including

10   the note and deed of trust evidencing and securing the Danilyuks' loan.  (*See* Compl. ¶

11   III.I; Resp. (Dkt. # 12) at 5.)

12        On April 20, 2010, the Danilyuks filed this lawsuit in King County Superior

13   Court.  In their complaint, the Danilyuks assert nine causes of action against Chase for:

14   (1) rescission under TILA; (2) violations of TILA; (3) violations of the Real Estate

15   Settlement Procedure Act ("RESPA"); (4) violations of Washington's Consumer

16   Protection Act ("CPA"); (5) breach of fiduciary duties; (6) fraud; (7) intentional infliction

17   of emotional distress; (8) unjust enrichment; and (9) injunctive relief.  Chase removed

18   this action to federal court.

19                              **III.   ANALYSIS**

20        Chase moves to dismiss all nine claims, arguing that the Danilyuks' claims are

21   premised on the mistaken assumption that Chase assumed all of Washington Mutual's

22   liabilities when the FDIC transferred Washington Mutual's assets to Chase.  (Mot. (Dkt.

ORDER- 3

1   # 6) at 2.)  Rather, as Chase argues, when the OTS closed Washington Mutual and

2   appointed the FDIC as receiver, the FDIC succeeded to all Washington Mutual's assets

3   and liabilities.  (*Id.*)  On September 25, 2008, the FDIC transferred the bulk of

4   Washington Mutual's assets to Chase pursuant to a purchase and assumption agreement

5   ("P&A Agreement").  (*Id.*)  Article 2.5 of the P&A Agreement provides that Chase did

6   not assume Washington Mutual's potential liabilities associated with claims of

7   borrowers.  (*Id.*)  Thus, Chase contends that the Danilyuks' claims, which it characterizes

8   as arising out of the Danilyuks' capacity as borrowers of Washington Mutual, cannot be

9   maintained against Chase.  (*Id.*)

10  **A.      Motion to Dismiss Standard**

11          To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure

12  12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a

13  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct.

14  1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  It is

15  not enough for a complaint to "plead[ ] facts that are 'merely consistent with' a

16  defendant's liability."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, "[a] claim has

17  facial plausibility when the plaintiff pleads factual content that allows the court to draw

18  the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

19  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

20  than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*,

21  550 U.S. at 556).  Although a court considering a motion to dismiss must accept all of the

22  factual allegations in the complaint as true, the court is not required to accept as true a

1  legal conclusion presented as a factual allegation.  *Id.* at 1949-50 (citing *Twombly*, 550

2  U.S. at 556).  In the event the court finds that dismissal is warranted, the court should

3  grant the plaintiff leave to amend unless amendment would be futile.  *Eminence Capital,*

4  *LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

5  **B.     Judicial Notice of the P&A Agreement**

6          Chase requests that the court take judicial notice of the P&A Agreement.  (Mot. at

7  3.)  As a general rule, "a district court may not consider any material beyond the

8  pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668,

9  688-89 (9th Cir. 2001) (quoting *Branch v. Tunnel*, 14 F.3d 449, 453 (9th Cir. 1994)).  A

10  district court may, however, "look beyond the complaint to matters of public record and

11  doing so does not convert a 12(b)(6) motion to one of summary judgment." *Mack v.*

12  *South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *see also Disabled Rights*

13  *Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004).  Other

14  courts have taken judicial notice of the P&A Agreement between the FDIC and Chase.

15  *See, e.g., Allen v. United Fin. Mortgage Corp.*, 660 F. Supp. 2d 1089, 1093-94 (N.D. Cal.

16  2009); *Molina v. Wash. Mut. Bank*, No. 09-CV-00894-IEG (AJB), 2010 WL 431439, at

17  *3 (S.D. Cal. Jan. 29, 2010).  Here, the court takes judicial notice of the P&A Agreement

18  because it is a public record and not the subject of reasonable dispute.

19  **C.     Chase's Liability Under the P&A Agreement**

20          There is no dispute that the FDIC had the authority to transfer certain Washington

21  Mutual liabilities to Chase through the P&A Agreement while retaining others.  Article

22

2.5 of the P&A Agreement expressly provides that the FDIC retained Washington

Mutual's potential liabilities associated with borrowers' claims:

> Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extrajudicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

(Stines Decl. Ex. 2 at 15.)  A range of federal courts have held that the P&A Agreement

relieves Chase of liability for borrowers' claims against Washington Mutual.  These

courts reason that Chase became a successor to Washington Mutual by executing the

P&A Agreement; the P&A Agreement governs the status of Chase as successor; and

Article 2.5 of the P&A Agreement establishes that Chase did not assume liability for

borrowers' claims related to loans made by Washington Mutual prior to September 25,

2008.

District courts have repeatedly dismissed TILA and RESPA claims brought

against Chase because the P&A Agreement specifies that Chase did not assume liability

for such claims.  In *Molina v. Washington Mutual Bank*, No. 09-CV-00894-IEG (AJB),

2010 WL 431439 (S.D. Cal. Jan. 29, 2010), for example, the district court dismissed

TILA and RESPA claims against Chase that were based on actions committed during the

course of loan negotiations.  2010 WL 431439, at *4.  The *Molina* court reasoned as

follows:

On September 25, 2008 . . . [Chase] acquired certain assets and liabilities of [Washington Mutual] pursuant to the Purchase and Assumption Agreement. . . . . This provision establishes that [Chase] has expressly not assumed [Washington Mutual's] liabilities relating to borrower claims. . . . Accordingly, any of Plaintiffs' claims arising out of [Chase's] alleged status as successor in interest to Plaintiffs' borrower claims against [Washington Mutual] must fail.

*Id.* Similarly, in *Federici v. Monroy*, No. C09-4025 PVT, 2010 WL 1345276 (N.D. Cal. Apr. 6, 2010), the court dismissed all claims against Chase, which were predicated on allegations that Washington Mutual negligently prepared loan documents and made negligent misrepresentations. The court emphasized that because "all of the claims against [Chase] are based on [Washington Mutual's] lending activities, the liability for which was explicitly *not* assumed by [Chase] in its purchase of [Washington Mutual's] assets, the [complaint] does not state any claims upon which relief could be granted against [Chase]." 2010 WL 1345276, at *2 (emphasis in original).

Other federal courts have similarly interpreted the P&A Agreement, holding that Chase did not assume Washington Mutual's liability arising from borrowers' claims. *See, e.g., Yeomalakis v. F.D.I.C.*, 562 F.3d 56, 60 (1st Cir. 2009); *Johnson v. Wash. Mut. Bank*, No. 1:09-CV-929 AWI DLB, 2010 WL 682456, at *4 (E.D. Cal. Feb. 24, 2010); *Grealish v. Wash. Mut. Bank*, No. 2:08-CV-763 TS, 2009 WL 2170044, at *2 (D. Utah July 20, 2009); *Cassese v. Wash. Mut. Bank*, No. 05 CV 2724 (ADS) (ARL), 2008 WL 7022845, at *6 (E.D.N.Y. Dec. 22, 2008); *cf. Payne v. Sec. Sav. & Loan Ass'n*, 924 F.2d 109, 111 (7th Cir. 1991) (holding that the receiver of assets, not the subsequent purchaser of the assets, retained all liabilities not specifically enumerated in a similar purchase and assumption agreement).

ORDER- 7

Here, the court agrees that Article 2.5 of the P&A Agreement relieves Chase of all liability for borrowers' claims relating to loans made by Washington Mutual prior to September 25, 2008.

1.  Damages Claims for Violations of TILA, RESPA, and the CPA, Breach of Fiduciary Duties, Intentional Infliction of Emotional Distress, and Unjust Enrichment

In light of the P&A Agreement, the court concludes that the Danilyuks have not alleged facts sufficient to support claims for damages against Chase for violations of TILA, RESPA, and the CPA, breach of fiduciary duties, intentional infliction of emotional distress, and unjust enrichment.  As alleged in the complaint, these claims all stem from a loan transaction that occurred prior to September 25, 2008.  (*See* Compl. ¶ III.I.)  Under the P&A Agreement, Chase did not assume liability for borrowers' claims against Washington Mutual relating to loans made prior to September 25, 2008.  The Danilyuks' claims seek to hold Chase liable solely based on its status as assignee of Washington Mutual's assets; the Danilyuks do not allege facts relating to actions taken by Chase outside its role as assignee.  Without more, the court dismisses these claims with leave to amend.[1]

2.  TILA Rescission Claim and Injunctive Relief

In a credit transaction in which a security interest is retained in a consumer's principal dwelling, each consumer whose ownership interest is subject to the security

---

[1] The court notes that amendment may be futile, particularly with respect to the TILA and RESPA damages claims.  Nevertheless, the court is persuaded that the Danilyuks should be permitted an opportunity to amend at this early stage of the proceedings.

1    interest has a right to rescind the transaction.  *See* 12 C.F.R. § 226.23(a)(1).  The

2    consumer may exercise the right to rescind until midnight of the third business day

3    following delivery of notice of the right to rescind, or of all material disclosures,

4    whichever occurs last.  *See* 12 U.S.C. § 226.23(a)(3).  If, however, the required notice or

5    material disclosures are not delivered, the right to rescind will be extended from three

6    business days to three years.  *See id.*  Notices of the right to rescind shall "clearly and

7    conspicuously" disclose (1) the retention of a security interest in the consumer's principle

8    dwelling; (2) the consumer's right to rescind the transaction; (3) how to exercise the right

9    to rescind; (4) the effects of rescission; and (5) the date the rescission period expires.  *See*

10   12 U.S.C. § 226.23(b)(1)(i)-(v).  In addition, the creditor shall deliver two copies of the

11   notice of the right to rescind to each consumer entitled to rescind.  12 U.S.C. §

12   226.23(b)(1).

13          TILA provides that a consumer with a right to rescind "may rescind the

14   transaction as against any assignee of the obligation."  15 U.S.C. § 1641(c).  At least one

15   district court has held that the P&A Agreement does not insulate Chase from a rescission

16   claim because "TILA's rescission remedy is exercisable against the holder of the asset,

17   not the retainer of the liability."  *King v. Long Beach Mortgage Co*., 672 F. Supp. 2d 238,

18   246 (D. Mass. 2009); *see also Wilborn v. Advantage Fin. Partners, LLC*, No. 09-CV-

19   2068, 2010 WL 1194950, at *6 (N.D. Ill. Mar. 22, 2010) (holding that TILA rescission

20   claim could be brought against a subsequent assignee of the plaintiff's mortgage).  In

21   *King*, the plaintiff sought to rescind a mortgage finance loan made by Washington

22   Mutual, arguing that TILA violations committed by Washington Mutual extended his

1    right to rescind.  *King*, 672 F. Supp. 2d at 241.  Chase, as successor to Washington

2    Mutual, moved for summary judgment and argued that under the P&A Agreement the

3    FDIC retained liability for the plaintiff's rescission claim.  *Id*. at 242.  The court

4    disagreed, concluding that Chase was an assignee for purposes of a TILA rescission

5    claim:

> A transaction is an assignment even if related duties or liabilities are not
> transferred.  Just because liabilities are retained by the transferor does not
> mean the transferee is not an assignee.  Under TILA, it is the assignee who
> is subject to the consumer's statutory right to rescind loan transactions.
> Section 1641(c) expressly states that the rescission right is available against
> "any assignee of the obligation."  Having acquired the rights to the loan
> transaction, Chase is the current "assignee" of the promissory note and
> mortgage for the purposes of 15 U.S.C. § 1641(c).  The fact the FDIC has
> retained the related liabilities does not alter Chase's status.

11   *Id.* at 248 (citations omitted).  The court further emphasized that it would be contrary to

12   congressional intent to allow a consumer's rescission right to be contracted away by the

13   FDIC, the original assignee, and Chase, the subsequent assignee, without the consumer's

14   consent or input.  *Id.*

15       In this case, the Danilyuks allege that the notices of the right to rescind that were

16   delivered did not properly or adequately inform them of their rescission right, that they

17   transmitted a request for rescission, and that they are entitled to rescission as a remedy.

18   (*See* Compl. ¶¶ III.M, III.P.)  Chase does not address the merits of the Danilyuks'

19   rescission claim in depth, arguing simply that "this claim is without merit as plaintiffs do

20   not allege facts sufficient to support rescission under TILA."  (Reply (Dkt. # 18) at 2.)

21   Chase does not elaborate further.  Without more, the court declines to evaluate the

22   viability of the Danilyuks' rescission claim.  Chase has presented no argument to suggest

ORDER- 10

that the P&A Agreement bars the Danilyuks' rescission claim, and it is not the responsibility of the court to make Chase's arguments for it.  The court therefore denies Chase's motion to dismiss with respect to the Danilyuks' rescission claim.

In addition, the court denies Chase's motion to dismiss the Danilyuks' request for injunctive relief.  The court is mindful that the Danilyuks have not filed a motion for a temporary restraining order in federal court seeking to restrain a possible nonjudicial foreclosure sale, although they did so in state court prior to removal.[2]  The court also expresses skepticism that this claim constitutes a separate cause of action.  Nevertheless, Chase has not shown that injunctive relief is unavailable here.  On this record, the court denies Chase's motion to dismiss with respect to the Danilyuks' request for injunctive relief.

_____

[2] Pursuant to Local Rules W.D. Wash. CR 101(c), "[i]f a motion is pending and undecided in the state court at the time of removal, it will not be considered unless and until the moving party notes the motion on this court's calendar in accordance with CR 7(d)."

ORDER- 11

1

## IV.   CONCLUSION

2          For the foregoing reasons, the court GRANTS Chase's motion to dismiss (Dkt. #

3    6) with respect to the Danilyuks' damages claims for violations of TILA, RESPA, and the

4    CPA, breach of fiduciary duties, intentional infliction of emotional distress, and unjust

5    enrichment.  The court DISMISSES these claims without prejudice and with leave to

6    amend.  The court DENIES Chase's motion to dismiss with respect to the Danilyuks'

7    rescission claim and request for injunctive relief.

8          Dated this 2nd day of July, 2010.

9

10

11                                             JAMES L. ROBART
                                               United States District Judge

12

13

14

15

16

17

18

19

20

21

22

ORDER- 12